UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ABEBE TESEMA,

        Plaintiff,

   v.

LAKE WASHINGTON TECHNICAL COLLEGE, et al.,

        Defendants.

CASE NO. C04-2533JLR

ORDER

## I. INTRODUCTION

This matter comes before the court on a motion for summary judgment (Dkt. # 37) by Defendants Lake Washington Technical College ("LWTC" or "the college"), Suzanne Dalgarn and Leslie Stevenson-Johnson. Having considered the papers filed in support and in opposition, the court GRANTS Defendants' motion.

## II. BACKGROUND

LWTC dismissed Plaintiff Abebe Tesema from its nursing program after Mr. Tesema received failing grades in two classes: Pediatric Theory and a clinical course. In Mr. Tesema's three-credit Pediatric Theory class, instructor Julie Nugent-Carney assigned reading from chapters 8 and 9 of a required textbook. Nicholson Decl., Exh. A

ORDER – 1

at 84-85.[1]  The entire course spanned less than two weeks in January of 2004.  Id.  Mr. Tesema did not own the course text, but attests that he tried to obtain a copy through the campus bookstore and also attempted to get photocopies of the individual chapters from fellow students.  Id. at 13-38.  It is unclear when Mr. Tesema began his search for the text, but his failed attempt to photocopy individual pages from a classmate's book occurred on the last day of class.  Id. at 22.  Mr. Tesema read chapter 9, presumably by borrowing another student's book during class, but admits that he never read chapter 8. Id. at 8, 15.  Mr. Tesema testified that although Ms. Nugent-Carney did not instruct the students to ignore the readings, she told the class that the exam would focus on the lectures and class discussion.  Id. at 16.

Mr. Tesema took the exam and received a failing grade.  Following the exam, Ms. Nugent-Carney revisited several questions with the students and concluded that because some questions had more than one correct response, she would award additional points to students who selected one of the two possible answers; she also gave a six-point bonus to the entire class.  Id. at 42-44.  Mr. Tesema had concerns over other answers which he thought were inconsistent with information given in lecture.  Ms. Nugent-Carney did not adjust his grade when Mr. Tesema took up his concerns with her after class.

Shortly thereafter, Mr. Tesema contested his grade through LWTC's five-stage academic appeals process.  Mr. Tesema first met with Dean Mike Potter who urged Mr. Tesema to try and resolve the issue with his instructor (i.e., level one of the appeals process).  When Ms. Nugent-Carney reiterated that she would not award him any additional points, Mr. Tesema returned to Dean Potter who indicated that Mr. Tesema should formalize his complaint in writing.  During this time, Ms. Nugent-Carney left LWTC and was no longer available to discuss Mr. Tesema's exam grade.  Mr. Tesema then met with another nursing department faculty member, Defendant Ms. Dalgarn, who

---

[1] For clarity purposes, the court uses the Bate stamp number to indicate page numbers in Defendants' Exhibit A given that it contains several separately paginated documents.

ORDER – 2

was appointed by Dean Potter to address Mr. Tesema's concerns in Ms. Nugent-Carney's absence. Ms. Dalgarn reviewed Mr. Tesema's test and indicated that she thought he should receive 8 additional points; however, Ms. Dalgarn was unclear whether Mr. Tesema's additional points would constitute double-counting given the prior 6-point bonus issued by Ms. Nugent-Carney. According to Ms. Dalgarn, Mr. Tesema would not receive a passing grade even if she counted the 8 additional points. Dalgarn Decl. ¶8.

Ms. Dalgarn sought to give Mr. Tesema another opportunity to pass the course. After securing Dean Potter's approval, Ms. Dalgarn telephoned Mr. Tesema to inform him that he could retake an exam that would be based exclusively on the assigned reading (chapters 8 and 9) to occur the following day. Mr. Tesema at first objected, but ultimately appeared for the test. Defendant Ms. Stevenson-Johnson, another nursing school faculty member, administered the test, which consisted of multiple-choice questions written by the textbook's authors. Mr. Tesema received a grade of 66%; he needed 80% to pass. Nicholson Decl., Exh. A at 107. Ms. Dalgarn attests that she and Ms. Stevenson-Johnson encouraged Mr. Tesema to gain readmission to the nursing program in the summer quarter. Dalgarn Decl. ¶8. Mr. Tesema continued to contest his original exam grade and on February 17, 2004, Dean Potter denied Mr. Tesema's appeal in writing, constituting the close of level two of the appeals process. Id. He also provided Mr. Tesema with direction on how to proceed to the next phase. Id.

Concurrent with the grade appeal, Mr. Tesema began a clinical class that spanned just over one week, from February 25th to March 5th, 2004. Id. at 53. LWTC assigned Mr. Tesema to Anderson House, a home for critically ill, elderly, and disabled patients where he would work under the supervision of the on-site nursing staff. Id. at 54. Among other procedures, Mr. Tesema was responsible for administering medications, giving injections, and inserting feeding tubes. Ms. Dalgarn contends that, shortly after Mr. Tesema arrived at Anderson House, she received a phone call from the facility's Director of Nursing Services, Cyril Hegel. Dalgarn Decl. ¶11. According to Ms.

ORDER – 3

Dalgarn, Mr. Hegel sought to remove Mr. Tesema from the facility given the significant concerns of three Anderson House nurses. Id. Ms. Dalgarn assured Mr. Hegel that the facility could dismiss a student from the clinical program if staff had concerns regarding patient safety. Dalgarn Decl. ¶11. Mr. Hegel then dismissed Mr. Tesema. Nicholson Decl., Exh. A at 79-80. Based on his dismissal and performance evaluations by nursing staff,[2] LWTC faculty Ms. Dalgarn and Ms. Stevenson-Johnson determined that Mr. Tesema must receive a failing grade for the clinical course.

Meanwhile, Mr. Tesema appealed his Pediatric Theory grade to the next level by writing to Vice President of Instructional Services, Shirley Metcalf. As a result, Mr. Tesema obtained a hearing before the LWTC Judicial Board for Academic Appeals ("the Board")[3] at which Mr. Tesema provided testimony with his attorney there to advise him. The majority of the Board recommended to Ms. Metcalf that the appeal be denied. Id. at 108-110. Among their findings, the Board noted the short notice for the retake exam but believed that the nursing program had demonstrated a fair effort to allow Mr. Tesema to show mastery of the material in order to save him from having to repeat the course. Id. at 109. Although not discussed by either party, the court notes that the Board's dissenting voices, both students, thought Mr. Tesema should be given another opportunity to pass the class. Id. at 110.

Ms. Metcalf accepted the Board majority's recommendations and issued a denial of Mr. Tesema's appeal on April 19, 2004. In her letter, Ms. Metcalf noted that Mr. Tesema had completed the third of five stages in the appeals process; she also informed him how to proceed, if he sought further review. Id. at 111. About this same time, Mr.

---

[2]One of Mr. Tesema's performance evaluations completed by an Anderson House nurse included concerns such as administering medication that he had dropped on the floor, improperly cleaning a syringe, and miscalculating drug dosages on more than one occasion. Dalgarn Decl., Exh. B.

[3]The Board consists of two administrators, two faculty, and two students. Stevenson-Johnson Decl., ¶21.

ORDER – 4

1   Tesema received a letter informing him that the LWTC nursing school was dropping him
2   from the program based on his failures in both the clinical course and the Pediatric
3   Theory class. Id. at 152.

4       Mr. Tesema sought to appeal his clinical course failure and agreed to consolidate
5   his latest grievance with his Pediatric Theory grade appeal. Id. at 62-63. Mr. Tesema
6   then testified at a second hearing before Vice President of LWTC, Dennis Long,
7   regarding both failing grades. Id. at 64-65. Although Mr. Long concluded that Mr.
8   Tesema's Pediatric Theory exam grade did not merit adjustment, he offered Mr. Tesema
9   the opportunity to take another final exam, to be developed by the nursing program
10  faculty and for which he would be given more than a week to study. Id. at 130-31.

11      Expressing a level of mistrust over the entire affair, Mr. Tesema testified that he
12  declined the offer to retake another final exam. Id. at 76 ("I passed my first exam, and I
13  showed as proof, so there is no reason to take this – another third exam. Who is going to
14  give me again the exam?"). Instead, Mr. Tesema appealed both failing grades to LWTC
15  President, Michael Metke, who sits at the highest level of the academic appeals process.
16  In response to a letter prepared by Mr. Tesema's attorney, Id. at 132-49, Mr. Metke
17  issued the final decision of the college in a letter dated July 14, 2005 in which he found
18  that issuance of a failing grade to Mr. Tesema was neither arbitrary nor capricious. Id. at
19  150. Again, President Metke echoed the school's offer to allow Mr. Tesema to retake the
20  final exam. Mr. Tesema declined. As to the clinical course at Anderson House, Mr.
21  Metke agreed that the dismissal was appropriate given the cumulative safety concerns.
22  Id.

23      Mr. Tesema's remaining academic mishap involves a course entitled Professional
24  Vocational Relationships ("PVR"), which Mr. Tesema also took during the same quarter
25  as his Pediatric Theory class and clinical course. For some time after Mr. Tesema passed
26  the course, his transcript reflected an "incomplete" grade. Mr. Tesema does not dispute
27
28

ORDER – 5

that LWTC subsequently corrected Mr. Tesema's transcript. Stevenson-Johnson Decl. ¶17.

Mr. Tesema filed suit in this court alleging claims under 42 U.S.C. § 1983 ("section 1983") for violations of due process and equal protection,[4] as well as claims for retaliation, breach of contract, and a violation of the Washington State constitution. Defendants now move for summary judgment on all claims.

### III.  ANALYSIS

In examining a summary judgment motion, the court must draw all inferences from the admissible evidence in the light most favorable to the non-moving party. Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the opposing party must show that there is a genuine issue of fact for trial. Matsushita Elect. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). The opposing party must present significant and probative evidence to support its claim or defense. Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

**A.  Plaintiff's Federal Claims**

To succeed on a section 1983 claim, a plaintiff must establish that (1) the conduct complained of was committed by a person acting under color of state law, and (2) the

---

[4] Mr. Tesema does not brief the elements of a section 1983 claim, nor does he relate his due process claim to any particular cause of action. For purposes of this summary judgment motion, the court assumes that Mr. Tesema alleges his Fourteenth Amendment due process and equal protection claims under section 1983. Section 1983 provides, in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983.

ORDER – 6

conduct deprived the plaintiff of a constitutional right. Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled on other grounds by Daniels v. Williams, 474 U.S. 327, 330-1 (1986); see also L.W. v. Grubbs, 974 F.2d 119, 120 (9th Cir. 1992). "Persons" liable for damages under section 1983 include state employees sued in their individual capacities. Hafer v. Melo, 502 U.S. 21, 25 (1992). States and their agencies and state employees sued in their official capacities cannot be sued for damages under section 1983, although such parties remain proper defendants with respect to claimants seeking prospective relief. Id. at 25-27.

As a threshold matter, Defendants argue that neither LWTC nor its faculty are "persons" subject to suit for damages under section 1983 and thus, all of Mr. Tesema's federal claims must fail. Defendants appear to contend that sovereign immunity bars Mr. Tesema's section 1983 claims insofar as he has sued an arm of the state (LWTC) and the college faculty in their official capacity. Mr. Tesema makes no explicit argument to the contrary, but urges the court to use its "sound creativity and discretion" in granting equitable relief, presumably to avoid any Eleventh Amendment issues.[5] Pl.'s Opp'n at 5, 9 (citing League of Academic Women v. Regents of the University of California, 343 F. Supp. 636, 641 (N.D. Cal. 1972). It is altogether unclear to the court whether Mr. Tesema intended to sue LWTC faculty in their official or individual capacities and whether he has abandoned any damages claim against the school or faculty. Fortunately, the court's analysis does not require it to resolve the issue because Mr. Tesema fails to show a genuine factual dispute with regard to the second element of his section 1983 claims, namely that an alleged constitutional deprivation has occurred.

---

[5] Mr. Tesema requests, among other things, that this court grant him a passing grade in Pediatric Theory, expunge his record of any negative aspect of the current litigation, and require LWTC to allow him to retake the Pediatric Theory class or pay for an alternate class at another institution. Pl.'s Compl. at 15-16.

ORDER – 7

**1.    Due Process Claim**

Mr. Tesema alleges a violation of his due process rights under the Fourteenth Amendment, based largely on Defendants' failure to follow the precise timelines for academic appeals as prescribed in the Washington Administrative Code ("the WAC"). Wash. Admin. Code 495D-120-140 (2003).[6] The WAC directs the college to respond to academic appeals within a certain number of working days – ten or twenty, depending on the level of appeal. Id. In support of his contention, Mr. Tesema provides an unsigned document drafted by an unknown author that purports to show the number of days that LWTC exceeded the WAC timelines in responding to Mr. Tesema's appeal. Tesema Decl., Exh. A. Defendants contend that, even accepting Mr. Tesema's characterization of the timing of various events, LWTC and its faculty and administration went far beyond what is constitutionally required. Any slight delay in responding to Mr. Tesema's appeal requests, Defendants argue, does not rise to the level of a due process violation.

To gain the procedural protections of the Due Process Clause of the Fourteenth Amendment, Mr. Tesema must demonstrate that (1) his dismissal from LWTC deprived him of a liberty or property interest and (2) LWTC failed to provide sufficient due process with respect to such deprivation. Board of Curators of University of Missouri. v. Horowitz, 435 U.S. 78, 83-85 (1978). The court assumes without deciding that Mr. Tesema has a property or liberty interest in continued enrollment at LWTC, and thus the

---

[6]Neither party cites to the applicable code provision in effect during Mr. Tesema's appeals proceeding. Defendants bury the provision in a footnote, citing to WAC *459*-120-140, while Mr. Tesema cites to WAC 495D-120-*149*. Neither of these provisions exist. The parties do not dispute that LWTC employs a five-level appeals process proscribed by the WAC; the court, therefore, assumes that the parties intended to cite to Wash. Admin Code 495D-120-140, a section entitled "Student conduct code – Appeal of academic action or disciplinary action and student grievances," which details a five-step appeals process. The section falls under Title 495D, which includes, among other things, the governance structure, tuition schedule, college calendar and student conduct code for LWTC.

ORDER – 8

court turns to the second question of whether LWTC employed adequate procedures to protect Mr. Tesema's interest.[7]

The ultimate decision by a college to dismiss a student for academic deficiencies need only be "careful and deliberate" to meet federal due process requirements. Id. at 90. In Horowitz, the Supreme Court declined to require a formal hearing prior to the student's dismissal given the unique position of academic institutions in defining their own scholastic requirements. Id. at 90-91 (internal citations omitted). Here, it is undisputed that Mr. Tesema received prior notice of LWTC's dissatisfaction with his academic performance. It is also undisputed that Mr. Tesema engaged all five levels of LWTC's academic appeals process, two of which involved hearings at which Mr. Tesema testified with his attorney present. At every level of review, save for the first, LWTC provided its decision in writing, with a summary of its findings and with direction on how Mr. Tesema could proceed to the next level of the appeals process. Nicholson Decl., Exh. A at 107, 108-11, 130-31, 150. Further, the parties do not dispute that Mr. Tesema had multiple opportunities to retake the final exam for his Pediatric Theory course.

The court concludes that Mr. Tesema has fallen far short of raising a genuine issue of material fact as to whether Defendants' dismissal decision was anything less than careful and deliberate. Mr. Tesema cites no evidence to indicate improper notice or a lack of opportunity to be heard; his only contention, rather, is that the college apparently took *too long* in processing his appeal. In support of his allegation that LWTC's process was a "mockery" of due process, Mr. Tesema attempts to marshal facts to show that LWTC failed to adhere to timelines set forth in the LWTC student handbook ("the

---

[7]The Supreme Court assumed without deciding that a student has a liberty interest in pursuing a college education. Horowitz, 435 U.S. at 84. This court likewise declines to issue a ruling on the first element of a due process claim where the second element is dispositive and considered under a well-settled standard.

ORDER – 9

handbook") and the WAC.[8]  The Fourteenth Amendment, however, requires much less than the multi-staged process provided to Mr. Tesema by the college, see Horowitz, 435 U.S. at 90-91, and assuredly does not impose any deadlines by which the college must make their decision.  If anything, it appears that the additional time allowed Mr. Tesema to better prepare his case.  For example, Mr. Tesema's attorney submitted a lengthy brief several weeks after Mr. Tesema received notice denying his level-three appeal.  Nicholson Decl., Exh. A at 112-129 (dated June 1, 2004).  LWTC responded to his brief just two weeks later.  Id. at 130-31 (letter dated June 15, 2004).  Without more, the court cannot conclude that Mr. Tesema has raised a genuine issue for the trier of fact.  Accordingly, the court GRANTS Defendants' summary judgment motion on Mr. Tesema's due process claim.

### 2. Race Discrimination Claims

Mr. Tesema, a native of Ethiopia, contends that he was the subject of "blatant discrimination" in violation of the Equal Protection Clause of the Fourteenth Amendment and Washington's Law Against Discrimination ("WLAD"), RCW 49.60.010, *et seq*, when Ms. Stevenson-Johnson told him that he should not participate in a pediatric clinical class because his Pediatric Theory grievance was pending.  In support of this claim, Mr. Tesema contends that Ms. Stevenson-Johnson allowed "other students" who failed the Pediatric Theory exam to participate in the clinical class.  Mr. Tesema also

---

[8] Setting aside the improper form in which Mr. Tesema presents his evidence, the court expresses some serious questions about the information contained in Exhibit A to his deposition. The WAC specifies that the college should give a response within a particular number of *working* days. Wash. Admin. Code 495D-120-140(3),(4),(5),(6),(7) (2003). Not only do Mr. Tesema's calculations appear to fail to adjust for weekends, but in some instances the information contradicts his own testimony (e.g., citing three different grievances where the evidence shows that Mr. Tesema only filed two). Moreover, Mr. Tesema leaves out the dates of events that trigger a response from which the court could even conclude that a delay in fact occurred (e.g., at level four, a vice-president's decision must be rendered within ten working days of *receipt* of the judicial board's recommendation). Id. at 140(6). At best, Mr. Tesema has miscalculated the alleged deficiencies in LWTC's proceedings and at worst, Mr. Tesema has made a misrepresentation to the court.

ORDER – 10

contends that LWTC discriminated against him when they failed to timely record his passing grade in his PVR class on his transcript.

In order to succeed on his race discrimination claim under either federal or state law, Mr. Tesema must prove that Defendants' actions were racially motivated. Arlington Heights v. Metropolitan Housing Dev. Corp., 429 U.S. 252, 266 (1977) ("Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause"); McKinney v. City of Tukwila, 13 P.3d 631, 642 (Wash. Ct. App. 2000) ("[A]n action for discrimination under [WLAD] . . . requires a showing that the unequal treatment was *motivated* by race.") (emphasis original). In order to survive summary judgment, Mr. Tesema must produce evidence sufficient to establish a genuine issue of fact as to the Defendants' motivations. Federal Deposit Ins. Corp. v. Henderson, 940 F.2d 465, 471 (9th Cir. 1991); McKinney, 13 P.3d at 642.

Mr. Tesema has not provided any indirect or direct evidence of intentional discrimination on the part of any named Defendant. Although he contends that he was treated differently than other classmates, Mr. Tesema does not provide any evidence in support of this claim, other than generalized accusations. Celotex, 477 U.S. at 323 ("A complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."). The fact that the LWTC student handbook denounces discrimination does not constitute proof of racial animus on the part of the Defendants. Defendants, on the other hand, provide specific evidence that only one other student, an African-American male, failed the Pediatric Theory class and that the LWTC faculty gave him the same final make-up examination as administered to Mr. Tesema (which this student passed). Root Decl. ¶7.

As to the delay in correcting his transcript to reflect his passing PVR grade, Mr. Tesema provides no evidence that the lapse was due to racial animus. Defendants, meanwhile, indicate that the delay stemmed from the fact that the college did not have an adequate number of standardized exit examinations and that Mr. Tesema had to wait to

take the exam. Stevenson-Johnson Decl. ¶19. As a result, Ms. Stevenson-Johnson contends that she could not grade his exam concurrent with the other students which led to a delay in updating his transcript. Id. at ¶¶19, 20. Mr. Tesema does not dispute these facts.

Because Mr. Tesema has failed to raise a genuine issue of fact for trial, the court GRANTS Defendants' motion for summary judgment on Mr. Tesema's race discrimination claims under both federal and state law.

**B.     Retaliation Claim**

Mr. Tesema contends that Defendants violated the LWTC student handbook when they retaliated against him for objecting to his Pediatric Theory grade. Compl. ¶62 ("Such retaliation and reprisal was expressly forbidden by the administrative rules governing the conduct of the College with respect to its students."); Pl.'s Opp'n. at 6-8 ("[Defendant] took this action specifically toward the plaintiff, in direct violation of the terms set out in the LWTC Student Handbook . . ."); id. at 11 ("The retaliation effort claimed by plaintiff was indeed proximate or close in time to plaintiff's filing a grievance, an activity specifically protected by the college's own rule in the LWTC Student handbook . . ."). Nowhere does Mr. Tesema allege a statutory basis or any underlying constitutional grounds for his retaliation claim, and the parties do not cite, nor is the court aware of any authority that supports an implied cause of action for retaliation based on provisions of a student handbook.

Defendants, on the other hand, assume that Mr. Tesema bases his retaliation claim on WLAD's anti-retaliation provision.[9] Defendants contend that Mr. Tesema's claim fails on several grounds, including the fact that contesting a grade does not constitute

---

[9] WLAD's anti-retaliation provision states, in relevant part: "(1) It is an unfair practice for any employer, employment agency, labor union, or other person to discharge, expel, or otherwise discriminate against any person because he or she has opposed any practices forbidden by this chapter, or because he or she has filed a charge, testified, or assisted in any proceeding under this chapter." RCW § 49.60.210.

ORDER – 12

statutorily protected opposition activity, one essential element of a retaliation claim. See Delahunty v. Cahoon, 832 P.2d 1378, 1383 (Wash. Ct. App. 1992) (discussing the elements of a retaliation claim in the employment context).  Mr. Tesema does not contend that his claim arises under a statutory scheme other than WLAD and produces no legal authority to oppose Defendants' contention that his grade appeal is not protected by statute.  Without more, the court must GRANT Defendants' motion for summary judgment on Mr. Tesema's retaliation claim. Celotex, 477 U.S. at 323 ("A complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.").

**C.    State Law Claims**

   **1.    Breach of Contract**

Mr. Tesema contends that the LWTC student handbook sets out the terms of a general contract bewteen LWTC and its students for which Defendants are in breach.[10]  It states, in part:

> No one in the college community shall suffer recrimation or discrimination because of participation in the due process grievance procedure . . . Confidentiality will be observed pending resolution . . . A grievance shall be considered resolved if timelines are not maintained[.]

Tesema Decl., Exh. B.  In his opposition, Mr. Tesema points to three instances of alleged breach of the handbook: (1) LWTC's failure to keep his clinical course grade appeal confidential, Pl.'s Opp'n at 3, 7; (2) LWTC's failure to automatically resolve the grievance in Mr. Tesema's favor when it failed to issue decisions by certain deadlines, id. at 3; and (3) Defendants' alleged retaliation against Mr. Tesema for filing a grievance, id. at 2-3.  The parties do not dispute that the relationship between the college and Mr.

---

[10]Although Defendants indicate that over the course of discovery, Mr. Tesema pointed to other LWTC publications as binding contracts, Defs.' Summ J. Mot. at 22, Mr. Tesema makes reference only to the LWTC student handbook in his opposition.  By choosing not to oppose Defendants' summary judgment motion on his alternate contract theories, Mr. Tesema has failed to allege sufficient facts necessary to demonstrate that a genuine issue for trial exists on whether any other contract besides the handbook was breached.  Fed. R. Civ. P. 56(e).

ORDER – 13

Tesema is contractual in nature. Marquez v. Univ. of Washington, 648 P.2d 94, 96 (Wash. Ct. App. 1982). Thus, the court assumes that the handbook suffices as a contract, and takes each of the three alleged breaches in turn.

First, Mr. Tesema has not provided sufficient evidence from which a reasonable juror could conclude that Defendants breached the confidentiality provision of the handbook. Mr. Tesema contends that the college provided Anderson House nursing staff with a copy of his grievance regarding his dismissal from the clinical course – a dismissal precipitated by concerns of patient safety raised by the very same nursing staff. In support of this contention, Mr. Tesema points to an unauthenticated transcript of one of his hearings that purports to contain nurse Pamela Osborn's statement that she had previously received a copy of the grievance. Tesema Decl., Exh. C. Even assuming Mr. Tesema's facts as presented, Defendants persuasively argue that any reasonable interpretation of the handbook provision must allow the college to share a student's grievance letter with those evaluators who will have to defend their assessment and whom the college will call upon to testify at a hearing. See Marquez, 648 P.2d at 96-7 (refusing to rigidly apply contract principles to govern the "unique" student-University relationship and adopting the "reasonable expectations" standard) (citing Lyons v. Salve Regina College, 565 F.2d 200, 202 (1st Cir. 1977)). The court agrees with Defendants' reasonable construction of the confidentiality provision of the student handbook. Moreover, Mr. Tesema presents no evidence that Defendants improperly disclosed confidential information to anyone other than those personally involved in the appeals process.

Mr. Tesema has likewise failed to provide sufficient evidence that the college's lag in processing his grade appeal and its attendant failure to resolve the grievance in his favor constitutes breach. As discussed previously, the college afforded Mr. Tesema an extensive opportunity to contest his failing grades and to retake his Pediatric Theory exam in order to avoid retaking the three-credit, two-week course. Nevertheless, Mr. Tesema

ORDER – 14

argues that Defendants' failure to process his grievance according to schedule requires this court to grant him a passing grade. When a claimant asks a court to review a genuinely academic decision, as here, the court shows "great respect for the faculty's professional judgment. Plainly, [the court] may not override it unless it is such a substantial departure from accepted norms . . . ." Regents of University of Michigan v. Ewing, 474 U.S. 214, 225 (1985). Moreover, Washington courts have reasoned that "[t]he possibility of academic failure is implicit in the nature of the educational contract between a student and a university." Maas v. Gonzaga, 618 P.2d 106, 108 (Wash. Ct. App. 1980). Against this backdrop, the court declines to overturn an academic decision that in all respects appears conscientious and deliberate by employing a hyper-technical reading of a student handbook that governs internal college affairs.

Finally, as to Mr. Tesema's claim that Defendants breached the LWTC student handbook when they retaliated against him for filing his grade appeal, the court concludes that Mr. Tesema's breach on this ground is foreclosed by the court's prior analysis of his retaliation claim in section IIIB., supra.

For the reasons state above, the court concludes that Mr. Tesema has not raised a genuine issue of material fact as to his breach of contract claim. Accordingly, the court GRANTS Defendants' motion on this ground.

### 2. State Constitutional Claim

Lastly, Mr. Tesema's complaint includes a cause of action for violation of "Section 3 of the Washington State Constitution." It is unclear to which Article or Amendment of the Washington State Constitution Mr. Tesema refers. In any case, Defendants argue that Mr. Tesema's claim should be dismissed because claims for money damages are not available for state constitutional violations, citing to Blinka v. Washington State Bar Ass'n, 36 P.3d 1094 (Wash. Ct. App. 2001). In his opposition, Mr. Tesema does not make one reference to his unspecified state constitutional claim, except for his generalized request that the court use its creativity in granting him equitable relief where

ORDER – 15

1  damages are not available.  By choosing not to oppose Defendants' summary judgment
2  motion on his state constitutional claim, Mr. Tesema has failed to allege sufficient facts to
3  demonstrate that a factual dispute exists for trial.  Fed. R. Civ. P. 56(e) ("an adverse party
4  may not rest upon the mere allegations or denials of the adverse party's pleading, but . . .
5  must set forth specific facts showing that there is a genuine issue for trial.  If the adverse
6  party does not so respond, summary judgment, if appropriate, shall be entered against the
7  adverse party.").  The court GRANTS Defendants' motion for summary judgment on Mr.
8  Tesema's state constitutional claim.

## IV.  CONCLUSION

For the foregoing reasons, the court GRANTS Defendant's motion for summary judgment on all of Mr. Tesema's claims (Dkt. # 37), and this case is hereby dismissed.

Dated this 17th day of February, 2006.

JAMES L. ROBART
United States District Judge

ORDER – 16